# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

DIANNE JACOBS, Individually and as        )
Special Administrator for the purposes of  )
this Lawsuit on behalf of Decedent RITA   )
TREUTEL,                                   )
                                           )
          Plaintiff,                    )
                                           )
      v.                             )          Case No. 12-cv-00899
                                           )
3M COMPANY, *et al.*,                      )
                                           )
          Defendants.                   )


# OWENS-ILLINOIS, INC.'S
# BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Edward Casmere
Brian O. Watson
Schiff Hardin LLP
233 S. Wacker Dr. Suite 6600
Chicago, Illinois  60606
(312) 258-5500
(312) 258-5600 (facsimile)

*Attorneys for Defendant
Owens-Illinois, Inc.*

## I.     INTRODUCTION

In this asbestos personal injury action, Plaintiff sued Owens-Illinois and other defendants claiming that Rita Treutel developed a type of cancer (mesothelioma) allegedly caused by her exposure to asbestos. Concerning Owens-Illinois, Plaintiff alleges that Ms. Treutel was exposed to asbestos from Owens-Illinois Kaylo (a fire-resistant product that Owens-Illinois made for a limited period of time ending on April 1958) through her and her family's work at a door manufacturing plant located in Marshfield, Wisconsin.

Owens-Illinois requests summary judgment because there is no genuine dispute on six dispositive issues. *First*, Wisconsin law does not recognize the Plaintiff's product liability claim premised on Owens-Illinois's role as a patent licensor. *Second*, Plaintiff has no evidence that Ms. Treutel was ever exposed to asbestos from Owens-Illinois Kaylo, much less the evidence necessary to create a jury question whether it was a substantial factor in causing her alleged injuries. *Third*, Plaintiff's allegations of community exposure are barred by this Court's prior orders and Wisconsin law. *Fourth*, even if Plaintiff could show that Ms. Treutel was exposed to Owens-Illinois Kaylo, the Marshfield door plant was a sophisticated user of asbestos products. *Fifth*, the Marshfield door plant was in the asbestos-manufacturing trade and knew of the dangers of overexposure to asbestos, making additional warnings by Owens-Illinois duplicative and legally unnecessary as a matter of Wisconsin law. *Sixth*, Plaintiff's evidence is not sufficient to support her claim for punitive damages.

## II.    LEGAL STANDARD

Summary judgment is proper when there are no genuine disputes as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  A motion for summary judgment will not be defeated by "the mere existence" of some disputed facts, but will be denied when there is a genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

Summary judgment will be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Although the moving party bears the initial burden to show the absence of any genuine disputes of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250.  "Where there is no genuine issue of material fact, the sole question is whether the moving party is entitled to judgment as a matter of law."  *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).  "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party."  *Id.*

### III.   ARGUMENT

#### A.   Wisconsin Law Does Not Recognize a Product Liability Claim Premised on a Patent License.

First, as this Court has previously held, Wisconsin law does not recognize a product liability claim based on Owens-Illinois's role as a patent licensor. *Boyer v. Weyerhaeuser Co.*, 39 F. Supp. 3d 1036 (W.D. Wis. Aug. 22, 2014).   To support her product liability claims, Plaintiff must show at a minimum that Ms. Treutel was actually exposed to asbestos as a user of Owens-Illinois products or was present where the products were actually used during her employ.  *Id.*

In this record, however, there is no evidence that anyone ever used Owens-Illinois Kaylo during Ms. Treutel's employ or in her presence at the Marshfield plant. Def. Owens-Illinois, Inc.'s Statement of Proposed Findings of Fact (Def.'s SPFF) at ¶¶ 10-12. In fact, before the Marshfield plant started using "Kaylo" door cores in September 17, 1959, Owens-Illinois sold the entire Kaylo business on April 30, 1958, to Owens Corning Fiberglas — a separate company that made and sold Kaylo into the 1970s. *Id.* at ¶¶ 7-8. Because Plaintiff cannot show that Ms. Treutel ever used Owens-Illinois products or was ever present where the products were used during her employ, Owens-Illinois should be dismissed with prejudice.

#### B.   Plaintiff Cannot Show that Exposure to Owens-Illinois Kaylo Was a Substantial Factor in Causing Ms. Treutel's Injuries.

Moreover, as a matter of Wisconsin law, Plaintiff must show that each defendant's product was a substantial factor in causing the injury to survive summary judgment.  *Miller v. Am. Art Clay Co. Inc.*, No. 12-CV-516-JDP, 2014 WL 2860872, at *2, 7

(W.D. Wis. June 23, 2014) (granting summary judgment where only possibility plaintiff exposed to defendant's product); *Merco Distrib. Corp. v. Commercial Police Alarm Co., Inc.,* 84 Wis. 2d 455, 460, 267 N.W.2d 652, 655 (Wis. 1978).  Wisconsin law requires more than a "mere possibility" that a defendant's product caused the injury.  *Zielinski v. A.P. Green Indus., Inc.,* 2003 WI App 85, ¶ 8, 263 Wis. 2d 294, 301, 661 N.W.2d 491, 494 (Wis. Ct. App. 2003); *Singer v. Pneumo Abex, LLC,* 2012 WI App 27, ¶ 21, 339 Wis. 2d 490, 809 N.W.2d 900, *review denied,* 2012 WI 77, 342 Wis. 2d 156, 816 N.W.2d 322 (Wis. Ct. App. Jan. 18, 2012).

Plaintiff must come forward with affirmative evidence — documentary or testimonial — to establish proof of substantial causation against each defendant. *Alexander v. Auer Steel & Heating Co.,* No. 2014AP335, 2015 WL 519221, ¶ 26 (Wis. Ct. App. Feb. 10, 2015) (affirming summary judgment); *Risse v. Bldg. Servs. Indus. Supply, Inc.,* 2012 WI App 97, ¶ 23, 344 Wis. 2d 124, 820 N.W.2d 156 (Wis. Ct. App. 2012) (affirming summary judgment because plaintiff failed to come forward with documents or witnesses establishing causation).  Where, as here, "the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Merco,* 267 N.W.2d at 655; *Alexander,* 2015 WL 519221, ¶ 26.  Because Plaintiff has no causation evidence against Owens-Illinois, Plaintiff's claims fail as a matter of law.  *Miller,* 2014 WL 2860872, at *3.

1.    **Plaintiff Must Establish that Ms. Treutel Was Actually Exposed to Asbestos from an Owens-Illinois Product.**

More specifically, Plaintiff must establish that Ms. Treutel "inhaled asbestos dust

from the defendant's product." *Lee v. John Crane, Inc.*, No. 90-C-845-C, 2003 WL 23218095, at *2 (W.D. Wis. Mar. 19, 2003) (granting summary judgment in case filed by the same firm here because no proof of exposure to asbestos-containing dust associated with defendant's product). Plaintiff's evidence must show that Ms. Treutel was exposed to asbestos from a specific defendant's asbestos-containing product, like Owens-Illinois Kaylo, as opposed to any asbestos-containing product manufactured by any other company. *Id.*; *Alexander*, 2015 WL 519221, ¶ 26; *Singer*, 2012 WI App 27, ¶ 23; *Miller*, 2014 WL 2860872, at *6.

Plaintiff cannot rely on speculative inferences that Ms. Treutel may have worked with a defendant's asbestos-containing product. *Singer*, 2012 WI App 27 at ¶¶ 19, 23 (reversing trial court's denial of judgment n.o.v. because documents showed injured party's employer purchased defendant's asbestos-containing products but not that employer used them in the place where injured party worked, leaving "no evidentiary basis for the numerous inferences" plaintiff asked the court to draw); *Miller*, 2014 WL 2860872, at *4 (granting summary judgment because generalized testimony in association with catalog identifying several types of the product at issue).

Both federal and state courts applying Wisconsin law have consistently granted summary judgment where, as here, plaintiffs fail to show that the injured person was exposed to asbestos from the defendant's product. The Wisconsin Court of Appeals affirmed summary judgment due to lack of causation in *Risse*, *Singer*, and *Alexander*. *Alexander*, 2015 WL 519221, ¶ 26; *Risse*, 2012 WI App 97, ¶ 23; *Singer*, 2012 WI App 27, ¶ 23. Courts in this district have also granted summary judgment based on the lack of

causation evidence.  *Lee*, 2003 WL 23218095, at *2; *Miller*, 2014 WL 2860872, at *4.

> **2.    There Is No Evidence Ms. Treutel Was Ever Exposed to Asbestos from Any Owens-Illinois Product.**

In this case, there is no evidence that Owens-Illinois Kaylo was ever used at the Marshfield plant.  Def.'s SPFF at ¶¶ 5-9.  No documents show that the Marshfield plant ever used Owens-Illinois Kaylo.  *Id.* at ¶¶ 5-9, 13-57.  There are no invoices showing that Kaylo was ever shipped to the Marshfield plant, until an invoice from Owens Corning Fiberglas Corporation in September 17, 1959 — more than a year after Owens-Illinois sold the entire Kaylo business to Owens Corning Fiberglas Corporation on April 30, 1958.  *Id.* at ¶ 8-9.

No witness, including Ms. Treutel herself or her family members, has ever identified Owens-Illinois Kaylo door core at the Marshfield Plant.  Indeed, the undisputed evidence is the Marshfield plant used door core manufactured by companies other than Owens-Illinois: (1) the Armour Research Foundation, (2) Johns-Manville, (3) Owens-Corning Fiberglas Corporation, and (4) Weyerhaeuser.  *Id.* at ¶¶ 13-57.  Although the record is filled with undisputed evidence about other companies and their products, there is no evidence at all that Owens-Illinois Kaylo was ever present at the Marshfield plant.  *Id.*

Plaintiff's attorneys also admit they have no evidence that shows Owens-Illinois Kaylo door core was ever present at the Marshfield door plant:

> MR. CASCINO:  We have no documents. And if we do, there may be one or two invoices I saw, but I don't even believe, my legal assistant's saying no, shaking his head no is that there are none.

So the only thing we have are, again, is what Riley provided us, which was an affidavit by him saying that they did have a process patent.

THE COURT:  Okay. Well we will take that then as your representation with respect to having searched the materials, and you're telling me then you see nothing that shows any specific kind of connection, other than what you said with respect to information you have for Mr. Riley that I presume Mr. Casmere is aware of.

MR. CASCINO:  Yes, Your Honor. That's true.

*Id.* at ¶ 9.

Other companies — and not Owens-Illinois — manufactured and sold the door cores that were used at the Marshfield plant.  As the Seventh Circuit has previously explained, numerous companies manufactured calcium silicate products "generically referred to as kaylo (also spelled 'k-low,' 'k-lo,' or 'kaylow') much like individuals often refer to generic tissue paper by the brand name 'kleenex.'" *Harris v. Owens-Corning Fiberglas Corp.*, 102 F.3d 1429, 1431 (7th Cir. 1996); *Shine v. Owens-Illinois, Inc.*, 979 F.2d 93, 97 (7th Cir. 1992) (plaintiff's "testimony indicates that he used that term [Kaylo] generically, rather than as a brand name").  Under Wisconsin law, "'when the matter remains one of pure speculation or conjecture *or the probabilities are at best evenly balanced*, it becomes the duty of the court to direct a verdict for the defendant.'" *Alexander*, 2015 WL 519221, ¶ 26 (quoting Zielinski, 263 Wis.2d 294, ¶ 16).

Accordingly, Owens-Illinois is entitled to summary judgment on Plaintiff's claims because there is no evidence Ms. Treutel was ever exposed to asbestos from Owens-Illinois Kaylo at the Marshfield plant.  *See, e.g., Risse*, 2012 WI App 97, ¶ 23; *Alexander*, 2015 WL 519221, ¶ 26. Likewise, Plaintiff's community exposure allegations

must fail because there is no evidence that Owens-Illinois Kaylo was ever used at the Marshfield plant, let alone that Ms. Treutel was ever substantially exposed to asbestos from Owens-Illinois Kaylo.

### C. **Plaintiff's Community Exposure Allegations Fail as a Matter of Law.**

To be sure, this Court's orders have already dismissed Plaintiff's community exposure allegations.  In its previous orders, this Court allowed Plaintiff to pursue her allegations of occupational exposure to Owens-Illinois Kaylo. *Boyer v. Weyerhaeuser Co.*, 39 F. Supp. 3d 1036 (W.D. Wis. Aug. 22, 2014).  But this Court's orders did not allow Plaintiff to pursue her implausible allegations of community exposure.  Accordingly, any allegations based on Ms. Treutel's community exposure should be barred.  *Id.*

Plaintiff's community exposure theory, in a nutshell, would be that (a) Owens-Illinois Kaylo was actually used somewhere at the Marshfield plant at some point; (b) certain workers were actually in close proximity on a regular basis to Owens-Illinois Kaylo use; (c) significant quantities of asbestos from Owens-Illinois Kaylo adhered to their clothing; (d) these fibers traveled many miles away from the alleged point of use; (e) once in Ms. Treutel's vicinity those fibers that were so strongly bonded to the clothing to make the journey were then released in her presence in significant quantities on a regular basis such that it could cause Ms. Treutel's disease (and that her alleged injury was not caused by any of her direct occupational exposure to asbestos for years); and (f) Owens-Illinois knew by April 30, 1958, that this community exposure was possible *and* could cause harm.  Not one of those component elements is true, and none of them could ever be pled with plausible allegations.

Indeed, even if this Court's prior orders did not preclude this implausible theory, Owens-Illinois would be entitled to summary judgment for two additional reasons. First, there is no evidence at all that Owens-Illinois Kaylo was present at the Marshfield door plant, much less that Ms. Treutel was actually and substantially exposed to asbestos from Owens-Illinois Kaylo. *See Alexander*, 2015 WL 519221, ¶ 26; *Zielinski*, 661 N.W.2d at 497; *Lee*, 2003 WL 23218095, at *2. Second, even if Plaintiff's community exposure allegations were not barred by this Court's prior orders, and even if Plaintiff had evidence to show substantial exposure, Plaintiff's allegations would still fail as a matter of fundamental Wisconsin tort law.

### 1. Non-Occupational Exposure to Asbestos Was Not Known To Be Harmful When Owens-Illinois Sold Kaylo.

Under Wisconsin tort law, Plaintiff must establish that Owens-Illinois owed a legal duty to Ms. Treutel to prevail on a negligence claim. *See Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, ¶ 55, 245 Wis. 2d 772, 810, 629 N.W.2d 727, 745. Before a defendant owes a legal duty, however, the alleged risk must be foreseeable to the defendant. *See, e.g., id.*; *Morden v. Cont'l AG*, 2000 WI 51, ¶ 46, 235 Wis. 2d 325, 355, 611 N.W.2d 659, 674.

Here, Plaintiff has offered no evidence of a foreseeable risk of harm from community exposure to asbestos when Owens-Illinois manufactured Kaylo door cores in the 1940s and 1950s. Nor could she offer evidence. The best scientific and medical evidence establishes that the risk of harm to people with only derivative exposure to asbestos was neither known nor reasonably foreseeable in the 1940s and 1950s. For this

reason, courts in Wisconsin and around the country have held that no such duty exists as a matter of law.

### 2. The Risk from Community Exposure to Asbestos Was Unforeseeable the Entire Time Owens-Illinois Sold Kaylo.

In 1960, Dr. Wagner published the first study to associate any risk with non-occupational asbestos exposure. Def.'s SPFF at ¶¶ 58-66. But Owens-Illinois sold its last Kaylo product in April 1958, two years before Dr. Wagner even published his study. *Id.* at ¶ 60. Plaintiff has no evidence to show that any risk from community exposure to asbestos was foreseeable before Owens-Illinois sold the Kaylo business.

The undisputed evidence confirms that, when Owens-Illinois ceased manufacturing Kaylo in 1958, there was no scientific or medical knowledge that even suggested, much less established, a relationship between derivative exposure and a risk of developing asbestos-related disease. *Id.* at ¶¶ 58-66. The first published study or article regarding *any* association between non-occupational exposure to asbestos and asbestos-related disease was in 1960. *Id.* And the first study that showed people could get asbestos-related disease from asbestos on clothing that was brought home came out in 1965. *Id.* Even the Plaintiff's own experts admit that the risk of community exposure to asbestos was unforeseeable the entire time Owens-Illinois sold Kaylo. *Id.* at ¶¶ 61-66.

### a. Courts in Wisconsin and Across the Country Have Held that Risk from Derivative Exposure Was Not Foreseeable Until After Owens-Illinois Last Sold Kaylo.

Courts in Wisconsin and across the country agree that risk from household or community exposure was not foreseeable before 1960. A Wisconsin trial court granted

Owens-Illinois judgment as a matter of law (in a case litigated by the same law firm representing the plaintiff) because the risk of harm was not foreseeable:

> The Court, based on extensive briefing and argument of the parties, has previously made findings of fact and determined that during the time Owens-Illinois manufactured and sold Kaylo, that Owens-Illinois neither knew, nor should it have known that Kaylo would be harmful to the household members of persons who used Kaylo, and as such all of Plaintiffs' negligence claims, and their strict liability failure to warn claim were dismissed with prejudice . . . .

*Wilkoski v. Bldg. Serv. Indus. Sales Co.*, No. 06-CV-5841, 2012 WL 11860493, at *1 (Wis. Cir. Ct. Jan. 18, 2012), attached as Ex. A; *see also* Hr'g Tr. 71–73, *Wilkoski v. Bldg. Serv. Indus. Sales Co.*, No. 06-CV-5841 (Wis. Cir. Ct. Sept. 7, 2011).

This Wisconsin trial court finding is not unique.  Courts nationwide, applying a duty analysis indistinguishable from that applied in Wisconsin, have held that the risk of harm to people with non-occupational exposure was neither known nor reasonably foreseeable in the 1950s as a matter of law:

- *In re Certified Question from Fourteenth Dist. Ct. of Appeals of Tex.*, 740 N.W.2d 206 (Mich. 2007) (exposures between 1954 and 1965; "the risk of take home asbestos exposure was, in all likelihood, not foreseeable");

- *Alcoa, Inc. v. Behringer*, 235 S.W.3d 456 (Tex. App. Ct. 2007) (exposures between 1953 and 1955 and between 1957 and 1959; "the danger of non-occupational exposure to asbestos dust on workers' clothes was neither known nor reasonably foreseeable");

- *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439 (6th Cir. 2009) (exposures between 1951 and 1963; danger of bystander exposure was not foreseeable based on "common knowledge at the time and in the community");

- *Holmes v. Pneumo Abex LLC*, 955 N.E.2d 1173 (Ill. App. Ct. 2011) (exposures between 1962 and 63; no duty to spouse of worker (1) because the risk of harm from take-home exposures was not foreseeable when the plaintiff was exposed and (2) because of the lack of relationship between defendant and plaintiff);

- *Hoyt v. Lockheed Shipbuilding Co.*, 2013 WL 3270371 (W.D. Wash. June 26, 2013), *aff'd*, 540 Fed. App'x 590 (9th Cir. Sept. 10, 2013) (exposures between 1948 and 1958; risk not foreseeable during the relevant time period; plaintiff failed to offer evidence that the risk of take-home exposure was either known or knowable in light of the "common knowledge at the time and in the community");

- *Bootenhoff v. Hormel Foods Corp.*, CIV–11–1368–D, 2014 WL 3744011 (W.D. Okla. July 30, 2014) (exposures pre 1959; "[t]he fact of these first reports—*in the medical field*—which began to link the possibility of asbestos-related diseases to household members of workers does not demonstrate the risk of that disease should have been known in the industry by manufacturing companies").

Many courts have also gone on to find that the relationship between occupational exposure at the worksite and harm from "derivative," "take home," "household," or "environmental" asbestos exposure is too remote to justify the extension of a legal duty, even for exposures after the 1950s:

- *Georgia Pacific v. Farrar*, 432 Md. 523, 69 A.3d 1028 (Md. 2013) (exposures between 1968 and 1969; product manufacturer owed no duty; exposures post-dated 1965 Newhouse study, but pre-dated 1972 OSHA regulations; even if risk was foreseeable after 1965, there was no practical way the manufacturer could have directly warned individuals with whom they had no relationship);

- *Rohrbaugh v. Owens-Corning Fiberglass Corp.*, 965 F.2d 844 (10th Cir. 1992) (pre-1969 exposure; plaintiff was not a "foreseeable user or purchaser" of the defendant's product);

- *CSX Transp., Inc. v. Williams*, 608 S.E.2d 208 (Ga. 2005) (exposures between 1958 and 1996; employers owe no duty to non-employees);

- *In re New York City Asbestos Litig. (Holdampf v. A.C. & S., Inc.)*, 840 N.E.2d 115 (N.Y. 2005) (exposures between 1971 and 1996; employers owe no duty to non-employees);

- *Brewster v. Colgate-Palmolive Co., et al.*, 279 S.W.3d 142 (Ky. 2009) (exposures between 1966 and the 1970s; no duty by premises owner absent actual knowledge of specific hazards);

- *Riedel v. ICI Americas Inc.*, 968 A.2d 17 (Del. 2009) (exposures between 1962 and 1990; premises owner and manufacturer owed no duty based on lack of relationship with spouse of worker);

- *Nelson v. Aurora Equip. Co.*, 391 Ill. App. 3d 1036 (Ill. App. Ct. 2009) (exposures between 1968 and 1993; premises owner owed no duty based on lack of relationship with spouse and mother of workers);

- *Van Fossen v. MidAmerican Energy Co., et al.*, 777 N.W.2d 689 (Iowa 2009) (exposures between 1973 and 1997; premises owner owed no duty to spouse of employee subcontractor);

- *Price v. E.I. duPont de Nemours & Co.*, 26 A.3d 162 (Del. 2011) (exposures between 1957 and 1991; following 2009 decision in *Riedel*, employer owned no duty based on lack of relationship with employee's spouse);

- *Carel v. Fibreboard Corp.*, No. 94–5222, 1996 WL 3917 (10th Cir. Jan. 4, 1996) (exposures between 1950 and 1977; "manufacturer has no duty to warn when the injured party 'was never exposed to asbestos as a user or present where the product was used'").

For example, the Western District of Washington decided the issue in *Hoyt v. Lockheed Martin Corp.*, No. C12-1648, 2013 WL 3270371 (W.D. Wash. June 26, 2013). The *Hoyt* court concluded, as a matter of law, that it was not foreseeable during the 1950s that household members could be injured as a result of "take home" asbestos exposure. *Id.* at *6. The court "conducted an independent review of the case law, and found no case in which a court has concluded that the risk of 'take home' exposure was foreseeable in the 1950s." *Id.* The court's opinion in *Hoyt* was affirmed by the Ninth Circuit, holding that "no reasonable factfinder could conclude that harm from take-home exposure to asbestos should have been foreseeable to [the defendant] by 1958." *Hoyt v. Lockheed Martin Corp.*, 540 Fed. App'x 590, 592 (9th Cir. 2013).

**3.      Plaintiff's Strict Liability Claim Fails as a Matter of Law Because the Marshfield Plant — Not Ms. Treutel — Was the Purchaser or User of Door Cores.**

For her strict liability claim under Wisconsin law, Plaintiff must also show that (1) the product was in defective condition when it left the possession or control of the seller; (2) that it was unreasonably dangerous to the ***user or consumer***; (3) the defect was a cause of the injuries or damages; (4) that the seller engaged in the business of selling such product, or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the seller; and (5) that the product was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was when he sold it.  *Sub-Zero, Inc. v. Gen. Elec. Co.*, No. 09-cv-00497-wmc, 2010 WL 3584427, at *3–4 (W.D. Wis. Sept. 10, 2010) (citing *Haase v. Badger Mining Corp.*, 2004 WI 97, ¶ 25, 274 Wis. 2d 143, 682 N.W.2d 389)).

Therefore, Plaintiff's claim based on Ms. Treutel's derivative exposure fail because she was never a "user" or "consumer" of Owens-Illinois Kaylo.  *See id.*  No Wisconsin court has ever held a company liable for an unforeseeable risk to someone, like Ms. Treutel, who claims exposure not to the use of the product in the workplace, but rather to exposure to the residue of that product carried miles away from the point of use.  As discussed above, Ms. Treutel never purchased, used, or worked with or even around Owens-Illinois Kaylo.  Instead, Plaintiff tries to claim that Ms. Treutel came into contact with it — not as an employee at the Marshfield plant — but from exposure to dust in the community air and through the clothing of people who worked there. Plaintiff can cite no case, and we can find none, imposing liability under these

circumstances.  To deny summary judgment on these claims would require a significant expansion of Wisconsin strict liability law.

Wisconsin law would prohibit this vast expansion of tort liability.  Wisconsin courts have long cautioned against turning strict liability into "absolute liability."  *See Sub-Zero, Inc.*, 2010 WL 3584427, at *3-4; *Dippel v. Sciano*, 37 Wis. 2d 443, 460, 155 N.W.2d 55, 63 (Wis 1967); *Horst v. Deere & Co.*, 769 N.W.2d 536, 543, 551 (Wis. 2009) ("strict liability . . . is not absolute liability. We do not want to hold manufacturers liable for every injury involving their products."). Imposing strict liability on Owens-Illinois, solely for "community" asbestos exposure, would do just that.  Owens-Illinois had no ability to control the circumstances of the remote exposure alleged; the liability imposed would be subject to no meaningful limiting principle.

If held liable for injuries stemming from this remote, derivative exposure, Owens-Illinois would be charged to prevent injuries that it could not have foreseen when it produced these products in the 1940s and 1950s.  And the potential class of plaintiffs would be limitless.  Anyone living in the town or surrounding areas to any business that actually used Kaylo would be potential plaintiffs, a result Wisconsin law certainly did not contemplate and would not allow.  *See Horst*, 769 N.W.2d at 543, 551. For this additional reason, Owens-Illinois is entitled to summary judgment.  *Id.*

### D. The Marshfield Door Plant Was a Sophisticated User of Asbestos-Containing Products, Placing the Duty to Warn Ms. Treutel on the Plant — Not Door Core Manufacturers.

Furthermore, Plaintiff's claims are barred on a fourth independent basis -- the sophisticated user defense -- because the Marshfield plant knew of the dangers of

asbestos exposure.  Roddis and Weyerhaeuser had sufficient information to warn Ms. Treutel, and anyone else either working at the Marshfield plant, about the hazards of overexposure to asbestos, and the Marshfield plant was in the best position to provide those warnings.

Wisconsin law has adopted the sophisticated user defense so that suppliers need not warn a purchaser of the dangers of a product if the purchaser already knows or should know about those dangers.  *Haase*, 669 N.W.2d at 743; *Mohr v. St. Paul Fire & Marine Ins. Co.*, 2004 WI App 5, ¶ 15, 269 Wis. 2d 302, 318, 674 N.W.2d 576, 584 (Wis. Ct. App. 2003); *see also* Restatement (Second) of Torts § 388, cmt. b (1965).  Whether the sophisticated user defense bars Plaintiff's claims is a question of law properly decided by the courts.  *Haase*, 669 N.W.2d at 743.[1]  Wisconsin courts have outlined two policy reasons that support the sophisticated user defense:

> First, it places the duty to warn on the party arguably in the best position to ensure workplace safety, the purchaser-employer.  Second, the burden falls upon the party in the best position to know of the product's potential uses-thereby enabling that party to communicate safety information to the ultimate user based upon the specific use to which the product will be put.

*Haase*, 669 N.W.2d at 743.   Accordingly, when a sophisticated party purchases a

---

[1] The Wisconsin Supreme Court would likely hold that the sophisticated user defense bars Plaintiff's claims for both negligence and strict liability.  *See Shawver v. Roberts Corp.*, 90 Wis. 2d 672, 686, 280 N.W.2d 226, 233 (Wis. 1979) (analyzing known dangers defense, which functions similarly to sophisticated user defense, in analyzing both strict liability and negligence claims); *MindGames, Inc. v. W. Pub. Co.*, 218 F.3d 652, 655-56 (7th Cir. 2000) ("The rule is that in a case in federal court in which state law provides the rule of decision, the federal court must predict how the state's highest court would decide the case, and decide it the same way.").

- 17 -

product, the supplier may assume that the purchaser is taking adequate precautions to protect those that may be around the product. *Mohr*, 674 N.W.2d at 585.

In fact, a product supplier need not prove that the purchaser's precautions eliminated all hazards. *Haase*, 669 N.W.2d at 741; *Bergfeld*, 319 F.3d at 352. Instead, the purchaser must have been sufficiently aware of the hazards to protect others based on the knowledge available at the time of purchase. *See Haase*, 669 N.W.2d at 744-45 (applying defense when supplier provided outdated warning, but employer knew of updated warning); *Bergfeld*, 319 F.3d at 352-53 (analyzing employer's knowledge of hazards of silica exposure at the time of employment, not when the case was brought).

Here, Roddis and Weyerhaeuser already knew of the dangers of asbestos exposure in 1947, at the latest, which was before Plaintiff alleges that Ms. Treutel was exposed to asbestos. In 1947, the State of Wisconsin established laws that applied to all manufacturers, limiting the amount of asbestos dust that could be present in their facilities. Def.'s SPFF ¶¶ 67-72. Every Wisconsin employer knew "that asbestos was a hazardous material and that there were requirements for dust suppression." *Id.* at ¶ 72. Wisconsin law required employers to ensure that asbestos dust levels were consistently below 5 million particles per cubic foot (mppcf). *Id.* at ¶ 69. Indeed, Wisconsin Board of Health Employees travelled to worksites and measured the dust levels to ensure they were below the applicable threshold. *Id.* at ¶ 71.

Companies supplying asbestos-containing products to Wisconsin manufacturers expected that the manufacturers knew asbestos dust levels above 5 mppcf were potentially hazardous. *See Tri-State Mech., Inc. v. Northland Coll.*, 2004 WI App 100, 273

Wis. 2d 471, 478, 681 N.W.2d 302, 305 (Wis. Ct. App. 2001) ("[E]very person, sophisticated or otherwise, is presumed to know the law.").  Suppliers were therefore able to rely on manufacturers to warn their employees and others of the potential risks of asbestos exposure.  *See Haase*, 669 N.W.2d at 743.

Here, Roddis and Weyerhaeuser were in a far better position than any door core supplier – which did not include Owens-Illinois -- to know how the Marshfield plant used asbestos-containing door core materials.   *Haase*, 669 N.W.2d at 743.  No supplier to Roddis or Weyerhaeuser could know the processes used by Roddis or Weyerhaeuser to construct their own fire doors.  That is why Wisconsin law places the duty to warn on the sophisticated user, not suppliers.

### E.   Owens-Illinois Had No Duty to Warn Roddis or Weyerhaeuser of Dangers Generally Known to the Same Trade or Profession.

Fifth and finally, the Wisconsin Supreme Court has held that "there is no duty to warn members of a trade or profession about dangers generally known to that trade or profession." *Shawver v. Roberts Corp.*, 90 Wis. 2d 672, 686, 280 N.W.2d 226, 233 (Wis. 1979) (internal citation omitted).  The known dangers defense focuses on what members of a trade or profession knew about the dangers of a product, like Roddis or Weyerhaeuser, and not what the specific user-purchaser knew.  *Mohr*, 674 N.W.2d at 586.  The focus on the knowledge of the trade is what separates the known dangers defense from the sophisticated user defense.  *See Haase*, 669 N.W.2d at 743-44.

In *Haase*, the Wisconsin Court of Appeals acknowledged that the sophisticated user defense finds support in the known dangers defense but analyzed the

sophisticated user defense by focusing on the knowledge of the employer, not the trade as a whole.  *Id.*  The known dangers defense bars both negligence and strict liability claims.  *Shawver*, 280 N.W.2d at 233 (applying known dangers defense in analyzing both strict liability and negligence claims); *Bluell v. All Am. Homes, Inc.*, No. 01-C-0538-C, 2002 WL 32345611, at *9 (W.D. Wis. Nov. 4, 2002) (same).

During the entire time that Plaintiff claims Ms. Treutel was exposed to asbestos, Wisconsin manufacturers and sellers of asbestos-containing products knew of the dangers of excessive asbestos dust exposure.  In 1947, Wisconsin law imposed penalties on any employer that had asbestos dust levels above 5 mppcf.  Def.'s SPFF at ¶¶ 67-72. Manufacturers of asbestos-containing products knew "that asbestos was a hazardous material and that there were requirements for dust suppression."  *Id.* at ¶ 72.

Therefore, employers in the Wisconsin asbestos manufacturing trade, like Roddis or Weyerhaeuser, knew of the hazards of asbestos exposure.  *Id.*  William Lea, who worked at the Wisconsin Board of Health, also testified that union representatives at various companies would request dust studies if they felt conditions were outside of acceptable limits.  *Id.* at ¶ 71.  These known dangers must bar Plaintiff's claims against Owens-Illinois as a matter of Wisconsin law.

### F.     Plaintiff Cannot Sustain a Punitive Damages Claim as a Matter of Law.

For Plaintiff's punitive damages claim to go to the jury, she must also show by clear and convincing evidence that Owens-Illinois "acted maliciously or in an intentional disregard of the rights of the plaintiff."  Wis. Stat. § 895.043. "Malicious" means conduct arising from "hatred, ill will, a desire for revenge or inflicted under

circumstances where insult or injury is intended." *Strenke v. Hogner*, 2005 WI 25, ¶ 26, 279 Wis. 2d 52, 65, 694 N.W.2d 296, 302 (Wis. 2005). "Intentional disregard" for the rights of a plaintiff occurs only when a defendants "acts with a purpose to cause the result or consequence or is aware that the result or consequence is substantially certain to occur." *Id.* at ¶ 36, 279 Wis. 2d at 69-70, 694 N.W.2d at 304.

In order for an injury to be "substantially certain," the result must be nearly inevitable. *Id.* at ¶ 36 n.6, 279 Wis. 2d at 69-70, 694 N.W.2d at 304; *see also Gouger v. Hardtke*, 167 Wis. 2d 504, 512-13, 482 N.W.2d 84, 88 (Wis. 1992). Whether the jury may consider punitive damages is question of law that must be decided before the issue is presented to a jury. *Strenke*, 2005 WI 25 at ¶ 13, 279 Wis. 2d at 61, 694 N.W.2d at 300. Thus, courts "serve as gatekeepers before sending a question on punitive damages to the jury." *Id.* at ¶ 40, 279 Wis. 2d at 71, 694 N.W.2d at 305.

Plaintiff has no evidence that Owens-Illinois ever acted maliciously or with reckless disregard toward Ms. Treutel. At a minimum, Plaintiff must present clear and convincing evidence that, during the time it sold Kaylo, Owens-Illinois knew that use of Kaylo would inevitably cause harm to persons like Ms. Treutel. But Plaintiff has no evidence — let alone clear and convincing evidence — to support this allegation. The evidence shows that, based on the state of art in the 1940s and 1950s, Owens-Illinois reasonably believed that users of Owens-Illinois Kaylo were not at risk of developing asbestos-related illnesses. Because there is no evidence that Owens-Illinois acted maliciously or with an intentional disregard for Ms. Treutel's rights, Plaintiff's punitive damages claim cannot stand. *See* Wis. Stat. § 895.043; *Strenke*, 2005 WI 25 at ¶ 26, 279

Wis. 2d at 65, 694 N.W.2d at 302.

Indeed, any punitive damages imposed against Owens-Illinois would not be based on conduct directed toward Ms. Treutel, making them unconstitutional. "The purpose of punitive damages is to punish the wrongdoer and to deter the wrongdoer and others from similar conduct, not compensate the plaintiff for any loss." *See Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis.2d 158, 193, 557 N.W.2d 67, 82 (Wis. 1996).   The United States Constitution requires courts to ensure that "the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426, 123 S. Ct. 1513, 1524 (2003).  No defendant may be required to pay punitive damages unrelated to the plaintiff's damages in a particular case.  *Id.*

Courts must ensure that juries do not award punitive damages based on conduct directed toward nonparties.  *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007). Absent evidence of intentional conduct directed toward the plaintiff, an award of punitive damages would be unconstitutional.  *See Strenke*, 2005 WI 25 at ¶ 54, 279 Wis. 2d at 75, 694 N.W.2d at 307. Imposing punitive damages against Owens-Illinois here would violate the Due Process Clause because those damages would relate only to nonparties.   Plaintiff has no evidence that Owens-Illinois acted maliciously or with intentional disregard of the rights of Ms. Treutel.  Without such evidence, the only basis for imposing punitive damages is to punish Owens-Illinois for harm to nonparties, which violates the Due Process Clause.  *Philip Morris*, 549 U.S. at 355.  Given the evidence in this case, both the law and public policy weigh against imposing punitive

damages on Owens-Illinois for a product it stopped selling more than 50 years ago. Owens-Illinois therefore requests this Court enter judgment in its favor on Plaintiff's claim for punitive damages.

## IV.     CONCLUSION

For these reasons, Owens-Illinois, Inc. requests that the Court grant the Motion for Summary Judgment.

Dated:   May 14, 2015                        Respectfully submitted,

By: /s/ Brian O. Watson
Edward Casmere
Brian O. Watson
Schiff Hardin LLP
233 S. Wacker Dr. Suite 6600
Chicago, Illinois  60606
(312) 258-5500
(312) 258-5600 (facsimile)
*Attorneys for Defendant*
*Owens-Illinois, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 14, 2015, these papers were filed with the Clerk of the Court for the United States District Court for the Western District of Wisconsin using the CM/ECF system, which will send notification of such filing upon all parties who have appeared.

/s/ Brian O. Watson
Brian O. Watson

15640-1246

CH2\16260425.2